NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STACK STACKHOUSE,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>GARY M. LANIGAN, et al.,<br><br>　　　　Defendants. | Civil Action No. 12-0072 (DMC)<br><br><br>OPINION |

**APPEARANCES**:

    STACK STACKHOUSE
    31 Fulton Street
    Newark, NJ  07101
    Plaintiff <u>Pro Se</u>

**<u>CAVANAUGH, District Judge</u>**:

    Stack Stackhouse seeks to file a Complaint asserting violation of rights under 42 U.S.C. § 1983 without prepayment of the filing fee.  This Court will grant Plaintiff's application to proceed *in forma pauperis*.[1]  Having screened the Complaint in accordance with the requirements of 28 U.S.C. § 1915(e)(2)(B), this Court will dismiss the federal claims raised in the Complaint and decline to exercise supplemental jurisdiction over claims arising under state law.

---

[1] At the time he signed the Complaint, Stackhouse was a "prisoner" under 28 U.S.C. § 1915(h), as he was confined at Essex County Correctional Facility as a pretrial detainee.  This Court denied his initial application to proceed *in forma pauperis* without prejudice because Stackhouse did not submit the six-month institutional account statement required by 28 U.S.C. 1915(a)(2).  Stackhouse thereafter submitted the account statement.  He was subsequently released.  Notice of Change of Address, *Stackhouse v. Dow*, Civ. No. 11-7554 (DMC) (D.N.J. Jan. 7, 2013).

# I. BACKGROUND

Stack Stackhouse brings this Complaint for violation of his constitutional rights against Gary Lanigan, the Commissioner of the New Jersey Department of Corrections ("NJDOC"); Charles Warren, the Administrator of New Jersey State Prison; and Brenda Hutton, the Executive Administrator of New Jersey State Prison. Stackhouse asserts that each of these defendants is responsible for the welfare, safety and wellbeing of prisoners at New Jersey State Prison. He alleges that on December 14, 2007, the New Jersey Superior Court imposed a 35-year term of imprisonment; on December 17, 2010, the New Jersey Appellate Division reversed the plaintiff's convictions, ordering two "Separate" new trials; and on May 10, 2011, the Supreme Court of New Jersey "upheld" the decision of the New Jersey Appellate Division. (ECF No. 1 at 4.) Stackhouse asserts that "[f]rom May 10, 2011, up until this day (December 21, 2011), the plaintiff has and still is being 'Unlawfully Held' in a prison cell at New Jersey State Prison, with no prison time." *Id.* at p. 3.

Stackhouse maintains that the "defendants have no real true justification for violating the plaintiff's human, Civil, Federal and State Constitutional rights [which] protect[] the plaintiff from Unlawful imprisonment, Kidnapping, deprived of bail, Due process of the law, bodily injuries, Emotional distress and mental anguish[; that] defendants['] actions are based on deliberate neglect of responsibilities towards the plaintiff to safeguard the plaintiff's welfare, wellbeing and Constitutional rights[; and s]uch 'gross negligen[c]e' of responsibilities was the proximate result of the acts mentioned herein by the defendants, which the plaintiff has and still is suffering severe and permanent injuries . . . ." *Id.* at 3-4. He further alleges that the Essex County Prosecutor's Office, Essex County Public Defender's Office, and the Appellate Division and New Jersey

Supreme Court "all have full knowledge of the plaintiff's reversal of convictions and sentence. These people all work for the State of New Jersey[, and a]ll named defendants mentioned herein also work for the State of New Jersey. Due to their deliberate neglect of responsibilities, such fail[ure], lack of communicability caused them to violate the plaintiff's Human, Civil, Federal and State Constitutional rights which demands rectification by means of punishment by the same laws which they had sworn to enforce and uphold." *Id.* at 4. For relief, Stackhouse seeks immediate release from the defendants' custody and damages. (ECF No. 1 at 4-5.)

## II. STANDARD OF REVIEW

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding *in forma pauperis* or a prisoner is seeking redress against a government employee or entity. The Court must *sua sponte* dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

To survive dismissal "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to

3

relief," and will be dismissed. *Id.* at 678 (citations and internal quotation marks omitted); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009) ("[A] complaint must do *more than allege the plaintiff's entitlement to relief.* A complaint has to "show" such an entitlement with its facts.") (emphasis supplied). The Court is mindful, however, that the sufficiency of this *pro se* pleading must be construed liberally in favor of the plaintiff, even after *Iqbal*. *See generally Erickson v. Pardus*, 551 U.S. 89 (2007).

### III. DISCUSSION

A. Federal Claims

Section 1983 of Title 28 of the United States Code provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Incarceration without penological justification may violate a person's constitutional rights. *See Granberry v. Chairman of Pennsylvania Bd. of Probation and Parole*, 396 Fed. App'x 877, 880 (3d Cir. 2010); *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993); *Sample v. Diecks*, 885 F.2d 1099, 1110 (3d Cir. 1989).

4

> [T]o establish § 1983 liability for incarceration without penological justification, a plaintiff must demonstrate three elements. First, a plaintiff must demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must show a causal connection between the official's response to the problem and the unjustified detention.

*Moore*, 986 F.2d at 686; *accord Montanez v. Thompson*, 603 F.3d 243, 252 (3d Cir. 2010).

Relevant circumstances in assessing these factors are "the scope of the official's duties and the role the official played in the life of the prison." *Montanez*, 603 F.3d at 252. Deliberate indifference to the risk of incarceration beyond a prisoner's term has been found where prison officials failed to address a prisoner's credible evidence that he was entitled to release, *see Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985), and where prison officials "st[ood] idly by after an inmate raised the proposition that he was being unlawfully incarcerated and had provided documentary evidence in support of his claim." *Alexander v. Perrill*, 916 F.2d 1392, 1398 (9th Cir. 1990). The Third Circuit found a constitutional violation where the record demonstrated that Diecks, the defendant official:

> (1) believed Sample's inquiry might well have merit, (2) knew that the matter needed to be clarified, (3) believed Sample had to rely on his (Diecks') efforts alone to rectify the problem, (4) did not follow the relevant procedures mandated by the Pennsylvania Bureau of Correction, (5) took no other remedial action, and (6) did not inform Sample of any other action he (Sample) might take to resolve his problem.

*Sample v. Diecks,* 885 F.2d at 1111.

In this case, Stackhouse asserts that on December 14, 2007, after a trial, the Superior Court of New Jersey imposed a 35-year sentence; on December 17, 2010, the Appellate Division reversed the conviction and sentence; and on May 10, 2011, the New Jersey Supreme Court denied

5

the State's petition for certification. He alleges, however, that he remains confined at New Jersey State Prison, without an opportunity for release on bail or due process of law.[2] This Court's independent research confirms that the Appellate Division reversed Stackhouse's conviction and 35-year sentence on December 17, 2010, on the ground that the judge abused his discretion by joining for trial an indictment charging Stackhouse with robbery and other offenses that occurred in Newark on December 16, 2005, with an indictment charging him with carjacking and other offenses that took place in East Orange on February 11, 2006, *see State v. Williams*, 2010 WL 5348776 (N.J. Super., App. Div., Dec. 17, 2010). The New Jersey Supreme Court denied certification on May 12, 2011. *See State v. Williams*, 206 N.J. 65 (2011) (table).

The problem with Stackhouse's Complaint is that he does not allege facts showing that each or any of the named defendants – the NJDOC Commissioner, the Warden of New Jersey State Prison, and the Executive Administrator of New Jersey State Prison – was deliberately indifferent to his plight. Stackhouse asserts that the defendants were "responsible for the welfare, safety and wellbeing" of prisoners in their custody, and their "actions are based on deliberate neglect of responsibilities," (ECF No. 1 at 2, 4), but he does not allege facts suggesting that any of these administrators had knowledge of the problem and the risk that unwarranted punishment was being inflicted after his state sentence was reversed. In fact, nowhere in the Complaint does Stackhouse allege any specific examples of conduct – unconstitutional or otherwise – by the named defendants.

Liability under § 1983 requires personal involvement in the unconstitutional conduct, and an administrator cannot be held liable solely because he or she supervises a wrongdoer. *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility wen the plaintiff pleads factual content that

---

[2] Plaintiff was released after he signed the Complaint. *See supra* note 1.

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("An individual government defendant in a civil rights action must have personal involvement in the alleged wrongdoing"). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence," but such allegations must be made with appropriate particularity.[3] *Rode*, 845 F.2d at 1207. Because the Complaint here fails to establish that Lanigan, Warren and Hutton personally directed the allegedly unconstitutional conduct, or had knowledge of the alleged violation and acquiesced, the Complaint fails to state a claim for § 1983 liability against these defendants. This Court will accordingly dismiss the federal claims raised in the Complaint against the named defendants for failure to state a claim upon which relief may be granted.

It is conceivable that Stackhouse may be able to assert facts showing the liability under § 1983 of one of the named defendants or some other official whom he did not name in the Complaint. This Court will accordingly dismiss the Complaint with leave to file an amended complaint asserting a cognizable claim under § 1983 for incarceration without penological justification.[4] *See DelRio-Mocci v. Connolly Properties Inc.*, 672 F.3d 241, 251 (3d Cir. 2012); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

B. Supplemental Jurisdiction

---

[3] An official's review of, or failure to investigate, an inmate's complaints does not satisfy the required personal involvement. *See Rode*, 845 F.2d at 1207-08 (grievances filed with the governor's office were insufficient to establish the governor's liability under § 1983).
[4] Plaintiff should note that an amended complaint supersedes prior complaints. *See Snyder v. Pascack Valley Hosp.*, 303 F.3d 271, 276 (3d Cir. 2003). Accordingly, an amended complaint must name the defendants and assert facts stating a claim against each defendant, and must otherwise be complete in and of itself.

7

"Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1284-1285 (3d Cir. 1993). In this case, this Court is dismissing every claim over which it had original subject matter jurisdiction at an early stage in the litigation and declines to exercise supplemental jurisdiction over any claims Plaintiff may have under New Jersey law.[5]

## IV. CONCLUSION

Based on the foregoing, this Court will grant Plaintiff's application to proceed *in forma pauperis*, dismiss the federal claims in the Complaint, and decline to exercise supplemental jurisdiction.

*/s/ Dennis M. Cavanaugh*
**DENNIS M. CAVANAUGH, U.S.D.J.**

DATED: *May 30*, 2013

---

[5] In the event Plaintiff files an amended complaint which includes claims arising under state law, this Court will separate consider whether to exercise supplemental jurisdiction over such state law claims.

8